**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**STRATESPHERE LLC**
4449 Easton Way, 2nd Floor
Columbus, OH 43219

**KOGNETICS HOLDING COMPANY LLC**
4449 Easton Way, 2nd Floor
Columbus, OH 43219

Case No.: 2:20-cv-02972

**KOGNETICS LLC**
4449 Easton Way, 2nd Floor
Columbus, OH 43219

        Plaintiffs,

Judge:  Michael Watson

    v.

Magistrate Judge: Chelsey Vascura

**KOGNETICS INC.**
c/o The Corporation Trust Company
1209 Orange St
Wilmington, DE 19801

**INDERPREET THUKRAL**
15 Schuyler Hills Road
Loudonville, NY 12211

**RAJEEV VAID**
B 268 Sushant Lok I
Gurgaon 122002
Haryana
India

        Defendants.


**PLAINTIFFS' SECOND AMENDED COMPLAINT**

    Plaintiffs Stratesphere, LLC ("Stratesphere"), Kognetics Holding Company LLC

("KHC"), and Kognetics LLC (collectively, the "Stratesphere Companies" or "Plaintiffs"),

CO\6530315.3

through their attorneys, file this Second Amended Complaint[1] against Kognetics Inc., Inderpreet Thukral ("Inder"), and Rajeev Vaid ("Rajeev") (collectively, "Defendants") (Plaintiffs and Defendants are collectively referred to as the "Parties") and state as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to enforce the non-compete provisions of various agreements among the Parties, including, but not limited to, the Asset Purchase Agreement ("APA") (attached hereto as **Exhibit 1**), executed by the Stratesphere Companies and Kognetics Inc. Plaintiffs further seek to permanently enjoin from continuing their improper and unfair competition with Plaintiffs.

2.      Plaintiffs also seek certain software and intellectual property assets acquired by Plaintiffs through the APA, which have never been provided by Kognetics Inc. as required by the APA.

## PARTIES

3.      Stratesphere LLC is an Ohio limited liability company with its principal place of business at 4449 Easton Way, 2nd Floor, Columbus, Ohio 43219. Stratesphere LLC has the following members: Damon J. Caiazza, a resident of California, Daryl Sybert, a resident of Ohio, Kognetics Inc., a Delaware corporation, The Sybert Family LLC, an Ohio company, and Avitta Holdings LLC, an Ohio company.

4.      Kognetics Holding Company LLC is an Ohio limited liability company with its principal place of business at 4449 Easton Way, 2nd Floor, Columbus, Ohio 43219, and Stratesphere LLC is its sole member.

---

[1] Defendants' counsel provided written consent to the filing of this Second Amended Complaint by email on Wednesday, September 30. A copy of this communication is attached hereto as Exhibit 10.

CO\6530315.3

5.      Kognetics LLC is an Ohio limited liability company with its principal place of business at 4449 Easton Way, 2nd Floor, Columbus, Ohio 43219. Kognetics LLC has one member: Kognetics Holding Company LLC.

6.      Defendant Kognetics Inc. is a Delaware corporation which, upon information and belief, has its principal place of business in the State of New York.

7.      Defendant Inderpreet Thukral ("Inder") is an individual residing in the state of New York.

8.      Defendant Rajeev Vaid ("Rajeev") is an individual residing in the country of India.

## PARTIES

9.      While Plaintiffs reserve any future right to seek remand of this action, the Court has ruled it has jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

10.     This Court has personal jurisdiction over each of the Defendants because they regularly transacted business in Ohio, and because the agreements at issue were executed in Ohio.

11.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because Defendants transacted business in this district, the agreements at issue in this litigation set venue in this district, and/or because the claims for relief arise from actions which occurred in this district.

CO\6530315.3

## BACKGROUND ALLEGATIONS COMMON TO AND INCORPORATED INTO ALL COUNTS OF THE AMENDED COMPLAINT

12.     The Stratesphere Companies are a start-up located in Columbus, Ohio, where the executive team is based. The Companies have eight employees working in the United States, and twelve full time and part-time contractors in the United States and India.

13.     The Stratesphere Companies work with multinational companies to create business relationships and expansion opportunities in countries around the world, primarily in the defense industry. The Companies use proprietary technology to identify growth opportunities for their customers and to build partnerships uniquely tailored to their customers' needs.

14.     Stratesphere is the sole member of KHC.

15.     Kognetics Inc. was issued 125,000 Class B units in Kognetics LLC as a condition of the APA. As set forth below, those units have now been forfeited as a result of Defendants' breaches of the Operating Agreement. KHC owns 500,000 Class A units in Kognetics LLC.

16.     Of particular importance to the Stratesphere Companies' business is an artificial intelligence platform (the "Software"). The Software is uniquely useful to customers exploring opportunities for mergers and acquisitions and industrial partnerships growth opportunities.

17.     The Stratesphere Companies project a loss of approximately $600,000 in potential revenue from Kognetics LLC compared with their original projections for 2020 resulting from Defendants' conduct.

### The Parties Sign the APA and the Kognetics LLC Operating Agreement

18.     On August 22, 2018, the Stratesphere Companies entered into the APA with Defendants. (*See* APA).

CO\6530315.3

19.     The purpose of the APA was for the Defendants to sell their assets, particularly the Software, in exchange for a set number of units in Stratesphere and Kognetics LLC (but not in KHC). (*See* APA at § 1).

20.     Through the APA, KHC acquired the Software, including all of its associated intellectual property rights and customer contracts. (*Id.*).

21.     At the same time the APA was signed, Defendant and KHC also executed the Operating Agreement of Kognetics LLC (the "Operating Agreement"), attached hereto as **Exhibit 2**.

22.     The Operating Agreement "governs the relationship among the Members of the Company and between the Company and the Members[.]" (*See* Operating Agreement).

## Defendants' Promises of Non-Competition

23.     In order to protect Plaintiffs' legitimate business interests, the APA contains a non-competition provision. (*See* APA at § 9.02).

24.     Under the terms of the Asset Purchase Agreement, Kognetics Inc. agreed to refrain from competing with Plaintiffs by, *inter alia*, engaging in any business that provides its customers with a product similar to the Software for a period of three years from the effective date of the APA:

> **Section 9.02(a):**  For a period equal to three (3) years following the Closing (the "Restricted Period) no Seller nor the Seller Group nor any of their Affiliates shall, directly or indirectly, engage in, own, manage, operate, join, control, as partner, shareholder, consultant, manager, agent or otherwise, any individual, corporation, partnership, firm, other company, business organization, activity, entity or Person that distributes, provides, markets and/or sells one or more Competing Products. The geographic scope for the restriction set forth in this Section 9.02(a) shall be the world, which geographic scope Seller represents is coextensive with the geographic scope of Seller's Business. As used herein, a "Competing Product" shall mean any product or service which performs functions similar to or in substitution for the Software.

25.     The APA allows Plaintiffs to seek injunctive relief for breach of this provision, and to recover all costs, expenses and reasonable attorney's fees in order to enforce section 9.02. (APA at § 9.03(b)).

26.     The Operating Agreement sets forth additional restrictions on Class B Members in Kognetics LLC, further prohibiting Kognetics Inc. from engaging in competition with the Stratesphere Companies as long as it is a Class B Member and for a period of five (5) years thereafter:

> **Section 8.03(b):**  So long as Kognetics, Inc., is a Class B Member and for a period of five (5) years after electing to no longer be a Member, it shall not engage in any business activities except (i) to hold the Class B Units, (ii) to hold Class A Membership interests in Stratesphere, LLC, and (iii) employ persons who may be working as coders or developers in connection with the Software or other activities of the business of the Company or its Affiliates. All employees of Kognetics, Inc. shall execute and deliver to the Company, the Confidentiality, Intellectual Property and Non-Compete Agreement substantially in the form of Attachment No. 1 hereto. Any violation of this Section 8.03 (b) shall result in a forfeiture of all Class B Units held by Kognetics, Inc.

27.     Consistent with the Operating Agreement, Defendants Inder and Rajeev each executed an Employment Agreement which included a Confidentiality, Intellectual Property and Non-Compete Agreement substantially in the form of Attachment No. 1 to the Operating Agreement, copies of which are attached hereto as **Exhibit 3** ("Inder Employment Agreement") and **Exhibit 4** ("Rajeev Employment Agreement") (collectively, "Employment Agreements").

28.     Under the Employment Agreements, Inder and Rajeev agreed, while employed by Stratesphere, not to compete with Stratesphere without its express consent. (*See* Employment Agreements, Attachment No. 1, § 10(a)).

29.     Among several prohibited activities, Inder and Rajeev agreed not to: "engage in any activities . . . that compete with [Stratesphere]'s Business;" or to "request, induce, or solicit . . . any customers, prospective customers, or suppliers of [Stratesphere] to curtail or

6

cancel their business with [Stratesphere] or to do business within the scope of [Stratesphere]'s Business with a Competing Business." (*See* Employment Agreements, Attachment No. 1, § 10(a)).

30.     Inder and Rajeev also agreed to continue to be bound by non-competition restrictions for a period of two years following the termination of their employment with Stratesphere. (*See* Employment Agreements, Attachment No. 1, § 10(b)).

**Defendants Breach the APA, the Operating Agreement, and the Employment Agreements**

31.     The non-competition provision of the APA remains in force.

32.     The business activity restrictions of the Operating Agreement remain in force.

33.     The non-compete provisions of the Employment Agreements remain in force.

34.     On information and belief, in mid-2019, Inder and Rajeev, unbeknownst to any of Plaintiffs at the time, began covert negotiations with several third parties in pursuit of a deal to sell certain assets of the Stratesphere Companies. (*See* Declaration of Tariq Farwana ("Farwana Decl."), attached hereto as **Exhibit 5**, at ¶ 10).

35.     Though the Stratesphere Companies participated in negotiations with one of these companies, they were unaware at the time that Inder and Rajeev were, on information and belief, separately seeking individual employment with at least one of these third parties, pursuing deals that would have harmed Plaintiffs' businesses, and were sharing confidential and/or proprietary information of Plaintiffs. (*Id.* at ¶ 11).

36.     Plaintiffs learned of these negotiations around June 2019. Thereafter, Plaintiffs attempted to reset these negotiations and to reach a deal that would have benefitted Plaintiffs' businesses, rather than Defendants' personal interests. (*Id.* at ¶ 12).

CO\6530315.3

37. These negotiations ultimately dissolved: after misstatements and improper conduct by Defendants, the third party reduced its valuation of Stratesphere and a deal could not be reached on terms that would have furthered Plaintiffs' business interests. (*Id.* at ¶ 13).

38. Throughout these negotiations, Defendants continued their attempts to force Plaintiffs to accept a deal that, while advantageous for Defendants, would not have served the best interest of the Stratesphere Companies' business. (*Id.* at ¶ 14).

39. Similarly, throughout 2018 and 2019, on information and belief, Plaintiffs suspected numerous overcharges, inflated costs, and improper transfers of Plaintiffs' funds orchestrated by Defendants. (Farwana Decl. at ¶ 15). Defendants later produced reports to Plaintiffs admitting to these overcharges. (*Id.*).

40. Defendants' misconduct extended even further, including failures by Inder and Rajeev to adequately address the need to transfer personnel from companies controlled by Kognetics Inc. to Kognetics LLC, or to an India-based subsidiary wholly-owned by Kognetics LLC. Transferring these employees was an essential measure to improve the performance and growth of Plaintiffs' business, which Plaintiffs had discussed with Defendants on numerous occasions. (*Id.* at ¶ 16).

41. The Stratesphere Companies expended over $25,000 in an effort to obtain H-1B visas through the lottery process for two individuals employed by companies controlled by Kognetics Inc., and to petition to have a third Kognetics Inc. employee (employed by a company controlled by Kognetics Inc.) who had already been granted an H-1B visa transferred to the U.S. for employment with Plaintiffs. (*Id.* at ¶ 17).

42. Despite Plaintiffs' efforts, Defendants refused to cooperate with transferring these individuals to employment with Plaintiffs. (*Id.* at ¶ 18).

43.     Defendants' refusal to direct adequate resources to the growth of Plaintiffs' businesses, as required by the APA, Operating Agreement, and the Employment Agreements caused Plaintiffs to incur substantial monetary losses. (*Id.* at ¶ 19).

44.     In addition to these monetary losses, Plaintiffs have suffered incalculable losses of business growth and additional revenue that could have resulted from moving these employees to full-time, domestic employment with Plaintiffs. The absence of these potential employees slowed transfer of the IP assets from Kognetics Inc. to Plaintiffs, development of the Software, and limited the expansion of Plaintiffs' business. (*Id.* at ¶ 20).

45.     In an effort to address these various issues, Plaintiffs' counsel sent Kognetics Inc.'s counsel a letter regarding apparent breaches of the APA on April 9, 2020, a copy of which is attached hereto as **Exhibit 6**. Counsel also reminded Defendants that they "continued to be bound by the restrictive covenants" in the APA and their Employment Agreements.

46.     Defendants responded on April 21, 2020, a copy of which is attached hereto as **Exhibit 7**. In this correspondence, Defendants made clear that they were knowingly violating the APA, <u>admitting</u> that Defendants had "informed clients that the current contracts cannot be served and if they want continuity of service, they will have to execute a services contract with Kognetics Inc." (Ex. 6 at p. 1; *see also* Ex. 6 at p. 8).

47.     Defendants continue to mislead a significant portion of the Stratesphere Companies' customers and improperly attempt to compete with the Stratesphere Companies in violation of the APA and the Employment Agreements. (*See* Farwana Decl. at ¶ 28).

48.     On or around April 21, 2020, Kognetics Inc. informed Stratesphere customers that these customers would be required to sign contracts with Kognetics Inc. to continue accessing

the services provided by the Software. (*See* Farwana Decl.; and examples of such communications which are attached hereto as **Exhibit 8**).

49. As the emails in Ex. 8 demonstrate, Defendants continues to use Plaintiffs' intellectual property, and have instructed customers that they must receive Software-related services from Kognetics Inc.

50. Furthermore, several of Plaintiffs' customer accounts that are months past due, suggesting that these customers have, in fact, been paying Kognetics Inc. instead of the Stratesphere Companies, and creating a substantial harm to the Stratesphere Companies. (*See* Farwana Decl.). On information and belief, at least two customers continue to receive services from Kognetics Inc. and pay Kognetics Inc. for services that constitute violations of the APA. (*Id.* at ¶ 27).

### **Defendants' Conduct Harmed Plaintiffs and their Customer Relationships**

51. As alleged above, and confirmed in Defendants' own communications, Defendants have solicited Stratesphere Companies' customers throughout 2020. This has created substantial confusion among customers and harmed the Stratesphere Companies' business relationships.

52. During just the first and second quarters of 2020, several of the Stratesphere Companies' customers stated to Stratesphere representatives that they were confused regarding which company had the legal right to sell services related to the Software, and thus were confused about which entity to pay on an ongoing basis. (Farwana Decl. at ¶¶ 26-28).

53. At least two customers have communicated to the Stratesphere Companies that they received a letter from Defendants stating that the customers would be required to sign contracts with Kognetics Inc. to continue accessing the Software. (*Id.* at ¶ 27). An example of one such communication from Kognetics Inc. is attached hereto as **Exhibit 9**.

CO\6530315.3

54.     Furthermore, Defendants continue to market themselves, including marketing the Software as their own, to potential new customers of the Stratesphere Companies. The APA specifically restricts this conduct. (*Id.* at ¶ 28).

55.     The Stratesphere Companies will be harmed if Defendants continue to compete with them. Several customers have expressed confusion over which entity is authorized to sell services related to the Software and provide access to it, and have demanded that the Stratesphere Companies provide evidence of proper ownership of the Software, including a demand for copies of the APA (which is confidential by its terms). (Farwana Decl. at ¶ 29; *see also* APA at § 9.01).

56.     Though the Stratesphere Companies have already seen a significant loss of revenue from Defendants' conduct, the customer confusion that this conduct has created will also be difficult to repair. (Farwana Decl. at ¶¶ 29-30). The Stratesphere Companies may lose as much as 60% of their projected revenue in 2020 alone as well as the goodwill previously built with their customers, and will face an uphill battle to obtain new customers who are actively receiving false and misleading marketing information from Defendants. *Id.*

57.     Such losses could cause this portion of the business to drastically downsize or, potentially, could shut down the Stratesphere Companies. (*Id.* at ¶ 32).

## COUNT I (BREACH OF CONTRACT – APA) AGAINST KOGNETICS INC.

58.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

59.     The APA constitutes a binding contractual agreement between Plaintiffs and Kognetics Inc.

60.     Plaintiffs performed their material obligations under the APA.

11

61.     Within a period of three years following the execution of the APA, Kognetics Inc. directly and/or indirectly competed with Plaintiffs' business through the above-described conduct, including, but not limited to, communicating with Plaintiffs' clients regarding the Software and attempting to obtain compensation for services related to the Software, thereby breaching the APA. (APA at § 9.02).

62.     Injunctive relief is available to Plaintiffs as a remedy for breach of § 9.02. As the APA provides:

> **Section 9.03(a):**     Seller and each member of the Seller Group hereby acknowledge that any breach of Section 9.01 or 9.02 shall cause irreparable injury to the goodwill and proprietary rights of Purchaser and its Affiliates and subsidiaries, for which Purchaser shall not have an adequate remedy at law. Accordingly, Seller and each member of the Seller Group agree that Purchaser shall be able to seek immediate injunctive relief in the form of a temporary restraining order, preliminary injunction and/or permanent injunction against Seller and each member of the Seller Group or any of them (without the requirement of posting any bond but after making any required showing to the court) to restrain or enjoin any actual or threatened violation of any provision of Section 9.01 or 9.02.

63.     Accordingly, as Plaintiffs have been and will continue to be irreparably harmed by Kognetics Inc.'s breach of Section 9.02 of the APA, without any adequate remedy available at law, injunctive relief is appropriate to remedy Defendant's breach of Section 9.02.

64.     In addition to the non-monetary harm caused by Defendants' conduct, Plaintiffs have suffered monetary harm for the additional breaches described in paragraphs 34-42 *supra* in an amount to be proven at trial.

## COUNT II (BREACH OF CONTRACT – OPERATING AGREEMENT) AGAINST KOGNETICS INC.

65.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

CO\6530315.3

66.     The Operating Agreement constitutes a binding contractual agreement between Plaintiffs and Kognetics Inc.

67.     Plaintiffs performed their material obligations under the Operating Agreement.

68.     At all times material to this action, Kognetics Inc. owned Class B units of Kognetics LLC, such that it is a "Class B Member" of Kognetics LLC as that term is defined in the Operating Agreement.

69.     While Kognetics Inc. was a Class B Member of Kognetics LLC, it engaged in independent business activities separate and apart from "hold[ing] the Class B Units;" "hold[ing] Class A Membership interests in Stratesphere, LLC;" and "employ[ing] persons who may be working as coders or developers in connection with the Software or other activities of the business of the Company or its Affiliates" in violation of the Operating Agreement. (*See* Operating Agreement § 8.03(b)).

70.     While Kognetics Inc. was a Class B Member of Kognetics LLC, it directly and/or indirectly competed with Plaintiffs' business, specifically by:

   a.   making misrepresentations to Plaintiffs' customers regarding the Software and Plaintiffs' rights and/or abilities to continuing serving Software customers; and

   b.   on information and belief, diverting, receiving, retaining, and/or otherwise accepting payments for services related to the Software that should have been paid to Plaintiffs. (*See, e.g.* Barnhart Letter, at pp. 1-4).

71.     These activities were undertaken solely for the benefit of Kognetics Inc., and do not further "the business of the Company or its Affiliates" as permitted by the Operating Agreement.

CO\6530315.3

72.     Kognetics Inc. has therefore breached Section 8.03(b).

73.     The Operating Agreement states that "Any violation of this Section 8.03 (b) shall result in a forfeiture of all Class B Units held by Kognetics, Inc." (*Id.*).

74.     Plaintiffs have been and will continue to suffer monetary and non-monetary harm by Kognetics Inc.'s breach of the Operating Agreement.

**COUNT III (SPECIFIC PERFORMANCE – APA)**
**AGAINST KOGNETICS INC.**

75.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

76.     The APA constitutes a binding contractual agreement between Plaintiffs and Kognetics Inc.

77.     Plaintiffs performed their material obligations of the APA.

78.     As set forth in APA § 1.01, "at the Closing" of the APA, Defendant promised to "transfer, assign, convey and deliver" to Plaintiffs "all of [Defendant's] right, title and interest in" key intellectual property and technological assets, as well as certain customer contracts.

79.     Specifically, Defendant promised to convey:

a.      all rights in, to and under the Assigned Contracts and all outstanding offers or solicitations made by or to Seller in the Ordinary Course of Business to enter into any Contract with respect to the Software;

b.      all Intangible Assets;

c.      all Intellectual Property Assets and all Proprietary Intellectual Property Assets (as hereinafter defined), including without limitation, such Intellectual Property Assets and Proprietary Intellectual Property Assets as are described on Schedule 1.01(c);

d.      stationery, purchase order and sale order forms and invoices, brochures, advertising and promotional materials and similar items relating to the Business;

14

     e.       all marketing materials, research data (including marketing and concept testing data), customer and sales information, literature, advertising and other promotional materials and data, display materials and all training materials in whatever medium (e.g., audio, visual, digital or print), in each case, primarily used with respect to the Software;

     f.       all websites and website URLs and all social media accounts, including administrative rights and access and all content thereon, used in the Business; and

     g.       all goodwill relating to the Business or the Assets, including without limitation all goodwill associated with each registered trademark and trademark application and each unregistered trademark.

     h.       The Software and Documentation as are described on Schedule 1.01(h).

80.    Kognetics Inc. did not deliver all the Intellectual Property Assets and Proprietary Intellectual Property Assets described on Schedule 1.01(c) (the "IP Assets").

81.    Kognetics Inc. did not deliver the Software and Documentation as described on Schedule 1.01(h).

82.    Kognetics Inc.'s failure to deliver the IP Assets, Software and Documentation constitutes a breach of the APA.

83.    The IP Assets, Software, and Documentation are unique assets that Plaintiffs contracted to acquire, and no replacement product(s) exist(s).

84.    Given the unique nature of the assets at issue, money damages cannot remedy Kognetics Inc.'s breach, nor can they adequately provide for a substitute or replacement of Kognetics Inc.'s performance of the APA.

85.    Injustice and irreparable injury to Plaintiffs can be avoided only through specific performance of Section 1 of the APA.

CO\6530315.3

## COUNT IV (BREACH OF CONTRACT – EMPLOYMENT AGREEMENT) AGAINST INDERPREET THUKRAL

86.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

87.     Inder executed an Employment Agreement with Plaintiffs. (Ex. 3).

88.     The Employment Agreement constitutes a binding, enforceable contractual agreement between Inder and Stratesphere effective August 22, 2018. (*See id.*).

89.     Stratesphere performed its material obligations under the Employment Agreement.

90.     Under the Employment Agreement, Inder agreed, while employed by Stratesphere, not to compete with Stratesphere without its express consent. (*See* Inder Employment Agreement, Attachment No. 1, § 10(a)). Among several prohibited activities, Inder agreed not to: "engage in any activities . . . that compete with [Stratesphere]'s Business;" and "request, induce, or solicit . . . any customers, prospective customers, or suppliers of [Stratesphere] to curtail or cancel their business with [Stratesphere] or to do business within the scope of [Stratesphere]'s Business with a Competing Business."[2]

91.     On information and belief, Inder violated this and other provisions of the Employment Agreement through actions including, but not limited to:

    a.  disseminating misinformation to Stratesphere's customers by informing customers that Plaintiffs could not provide services related to the Software;

    b.  obstructing the transfer of employees from employment with companies controlled by Kognetics Inc. to Plaintiffs;

---

[2] "Competing Business" is a defined term which means "any corporation, partnership, person, or other entity that is researching, developing, manufacturing, marketing, distributing, or selling any product, service, or technology that is competitive with any part of the [Stratesphere] Business." (Inder Employment Agreement, Attachment No. 1, § 1(d)). "[Stratesphere]'s Business" is also defined in Section 1(e).

CO\6530315.3

    c. on information and belief, pursuing business deals with third parties to his own benefit and to the detriment of Plaintiffs;

    d. on information and belief, pursuing new contracts for Kognetics Inc., Pythhos Technology, and/or Boston Analytics in competition with Plaintiffs; and/or

    e. on information and belief, overcharging, diverting, or otherwise misappropriating funds paid to Kognetics LLC for improper purposes. (*See, e.g.* Barnhart Letter, at pp. 1-4).

92. On April 21, 2020, Inder confirmed that he had, in fact, violated the Employment Agreement: In a letter signed by Inder, Rajeev, and Kognetics Inc., Defendants stated that they had, "informed clients that the current contracts cannot be served and if they want continuity of service, they will have to execute a services contract with Kognetics Inc." (Ex. 4 at p. 1; *see also* Ex. 4 at p. 8).

93. Such conduct constitutes a breach of the Employment Agreement.

94. Stratesphere has suffered direct harm as a result of Inder's breach of the Employment Agreement, including loss of business, diminished value of Stratesphere's business, loss of customer goodwill, and other monetary damages in an amount to be proven at trial.

## <u>COUNT V (BREACH OF CONTRACT – EMPLOYMENT AGREEMENT) AGAINST RAJEEV VAID</u>

95. Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

96. Rajeev executed an Employment Agreement with Plaintiffs. (Ex. 4).

97. The Employment Agreement constitutes a binding, enforceable contractual agreement between Rajeev and Stratesphere effective August 22, 2018. (*See id.*).

98.     Stratesphere performed its material obligations under the Employment Agreement.

99.     Under the Employment Agreement, Rajeev agreed, while employed by Stratesphere, not to compete with Stratesphere without its express consent. (*See* Rajeev Employment Agreement, Attachment No. 1, § 10(a)). Among several prohibited activities, Rajeev agreed not to: "engage in any activities . . . that compete with [Stratesphere]'s Business;" and "request, induce, or solicit . . . any customers, prospective customers, or suppliers of [Stratesphere] to curtail or cancel their business with [Stratesphere] or to do business within the scope of [Stratesphere]'s Business with a Competing Business."

100.    On information and belief, Rajeev violated this and other provisions of the Employment Agreement through actions including, but not limited to:

    a.  disseminating misinformation to Stratesphere's customers by informing customers that Plaintiffs could not provide services related to the Software;

    b.  obstructing the transfer of employees from employment with companies controlled by Kognetics Inc. to Plaintiffs;

    c.  on information and belief, pursuing business deals with third parties to his own benefit and to the detriment of Plaintiffs;

    d.  on information and belief, pursuing new contracts for Kognetics Inc., Pythhos Technology, and/or Boston Analytics in competition with Plaintiffs; and/or

    e.  on information and belief, overcharging, diverting or otherwise misappropriating funds paid to Kognetics LLC for improper purposes. (*See, e.g.* Barnhart Letter, at pp. 1-4).

101.    On April 21, 2020, Rajeev confirmed that he had, in fact, violated the Employment Agreement: In a letter signed by Inder, Rajeev, and Kognetics Inc., Defendants stated that they had, "informed clients that the current contracts cannot be served and if they want continuity of service, they will have to execute a services contract with Kognetics Inc." (Ex. 4 at p. 1; *see also* Ex. 4 at p. 8).

102.    Such conduct constitutes a breach of the Employment Agreement.

103.    Stratesphere has suffered direct harm as a result of Rajeev's breach of the Employment Agreement, including loss of business, diminished value of Stratesphere's business, loss of customer goodwill, and other monetary damages in an amount to be proven at trial.

## COUNT VI (UNFAIR COMPETITION) AGAINST ALL DEFENDANTS

104.    Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

105.    Common law unfair competition "covers many kinds of unlawful or deceptive business practices[,]" and "extend[s] to the circulation of false rumors, or publication of statements, all designed to harm the business of another." *Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr. Inc.*, No. 1:15-CV-737, 2016 WL 3999315, at *3, *4 (S.D. Ohio July 26, 2016).

106.    Defendants have engaged in unfair competition with the intent of harming Plaintiffs' business by, among other actions:

    a.    falsely informing customers that Plaintiffs can no longer provide Software services, and that customers must execute contracts with Kognetics Inc.;

    b.    misleading Plaintiffs and ultimately failing to perform tasks necessary to obtain H-1B visas for three potential employees who were essential to the development of the Software and further growth of Plaintiffs' business; and

c. withholding intellectual property assets purchased by Plaintiffs through the APA.

107. Defendants' misrepresentations and other anti-competitive actions have caused the loss of business with current customers and impaired Plaintiffs' ability new customer contracts.

## COUNT VII (TORTIOUS INTERFERENCE)
## AGAINST ALL DEFENDANTS

108. Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

109. Plaintiffs had prospective and ongoing business relationships with over fifteen Software customers following the execution of the APA.

110. All the Defendants, including Defendants Inder and Rajeev, had knowledge of Plaintiffs' current and prospective relationships with these customers: Defendants had serviced these customer contracts prior to the execution of the APA, and thus had knowledge of the customer contracts and relationships Plaintiffs acquired after the execution of the APA.

111. Defendants intentionally interfered with Plaintiffs' prospective relationships through numerous actions between 2018 and 2020, including, but not limited to:

a. falsely informing "all customers" on or before April 21, 2020 that they could no longer receive services from any of Plaintiffs, and that instead, customers would "have to execute a services contract with Kognetics Inc." (Ex. 4, at p. 1);

b. withholding intellectual property assets purchased by Plaintiffs through the APA, thereby impeding Plaintiffs' ability to provide services to customers and prospective customers;

20

    c.   misleading Plaintiffs and ultimately failing to perform tasks necessary to enter two potential employees in the H-1B visa lottery and to petition for an existing H-1B employee to fill a position created in the US. These three employees were essential to the development of the Software and further growth of Plaintiffs' business; and

    d.   on information and belief, secretively pursuing a transaction with third parties during 2019 for the benefit of Defendants and to the detriment of Plaintiffs' business.

112.    Defendants engaged in the aforementioned conduct without privilege to do so.

113.    Plaintiffs have suffered significant injury as a result of Defendants' intentional interference. Specifically, upon information and belief, many of the customers who received Defendants' communications have ceased payments to Plaintiffs, and/or have decided not to sign or renew their contracts with Plaintiffs.

114.    Plaintiffs have further been damaged by, among other losses, the loss of revenue derived from Defendants' withholding of the intellectual property assets, from Plaintiffs' inability to collect outstanding invoices and accrued revenue from customers who have improperly received misinformation and/or services from Defendants, and from the funds expended and resource development lost as a result of Defendants' refusal to reallocate employees to the development of Plaintiffs' business.

## COUNT VIII (CONVERSION) AGAINST ALL DEFENDANTS

115.    Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

CO\6530315.3

116.     On information and belief, Defendants diverted customer funds paid to Plaintiffs and/or overcharged Plaintiffs for services rendered by Kognetics Inc. between late 2018 and early 2020. (*See, e.g.* Barnhart Letter, at pp. 1-4).

117.     These funds rightfully belonged to Plaintiffs at the time they were wrongfully obtained by Defendants.

118.     Defendants retained these funds knowing that they had been obtained through overcharges and/or through an improper movement of funds from Plaintiffs' accounts to accounts owned by Kognetics Inc., Inder, and/or Rajeev.

119.     Plaintiffs have been harmed and suffered damages through the loss of these funds, in an amount to be proven at trial.

## COUNT IX (DECLARATORY JUDGMENT)

120.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

121.     The APA was executed on August 22, 2018. As a condition of the APA, Kognetics Inc. was issued 125,000 Class B units in Kognetics LLC. (APA § 1.05).

122.     Membership in an LLC such as Kognetics LLC is accompanied by obligations to uphold fiduciary duties to the LLC, as well as additional obligations and rights as described in the Operating Agreement.

123.     The Operating Agreement sets forth restrictions on Class B Members in Kognetics LLC, further prohibiting Kognetics Inc. from engaging in competition with the Stratesphere Companies as long as it was a Class B Member and for a period of five (5) years thereafter. (Operating Agreement § 8.03(b)).

124.     Defendants violated the non-competition provisions of the Operating Agreement, the APA, and their respective Employment Agreements.

CO\6530315.3

125.     Violation of the non-competition provision of the Operating Agreement "shall result in a forfeiture of all Class B Units held by Kognetics, Inc." (Operating Agreement § 8.03(b)).

126.     In this litigation and elsewhere, Defendants have improperly maintained that Kognetics Inc. is the owner of the intellectual property assets conveyed to Plaintiffs through the APA, that Plaintiffs have no right to continue providing customers with access to and/or services related to the Software, and that Kognetics Inc.'s units in Kognetics LLC have not been redeemed.

127.     Defendants have maintained this position despite their <u>admission</u> that they breached the Operating Agreement, and the Operating Agreement's clear statement that such conduct "shall result in a forfeiture of all Class B Units held by Kognetics, Inc." (Operating Agreement § 8.03(b)).

128.     Defendants' statements and conduct have created a real, substantial, and immediate controversy regarding the membership status of Kognetics Inc. in Kognetics LLC.

129.     Declaratory relief from this Court will resolve this controversy between the Parties: a declaration confirming that Kognetics Inc.'s Class B units in Kognetics LLC have been redeemed.

<u>COUNT X (BREACH OF FIDUCIARY DUTY)</u>
<u>AGAINST INDEPREET THUKRAL</u>

130.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

131.     Under the terms of Operating Agreement, Inder was named as a Manager and CEO of Kognetics LLC. (Operating Agreement § 7.03(d)).

CO\6530315.3

132.    As a manager, Inder owed fiduciary duties to Kognetics LLC, including, but not limited to, those duties set forth in O.R.C. § 1705.29.

133.    Such duties include duties to act in good faith, in a manner the manager reasonably believes to be in or not opposed to the best interests of the company, and with the care that an ordinarily prudent person in a similar position would exercise.

134.    Inder breached his fiduciary duties to Kognetics LLC through the above-described actions, including, but not limited to:

   a. falsely informing "all customers" on or before April 21, 2020 that they could no longer receive services from any of Plaintiffs, and that instead, customers would "have to execute a services contract with Kognetics Inc." (Ex. 4, at p. 1);

   b. withholding intellectual property assets purchased by Plaintiffs through the APA, thereby impeding the growth of Kognetics LLC's business;

   c. misleading Plaintiffs and ultimately failing to perform tasks necessary to enter two potential employees in the H-1B visa lottery and to petition for an existing H-1B employee to fill a position created in the US. These three employees were essential to the development of the Software and further growth of Plaintiffs' business;

   d. on information and belief, secretively pursuing a transaction with third parties during 2019 for the benefit of Defendants and to the detriment of Plaintiffs' business; and

e. on information and belief, overcharging, diverting, or otherwise misappropriating funds paid to Kognetics LLC for improper purposes. (*See, e.g.* Barnhart Letter, at pp. 1-4).

135. Inder had no legitimate business purpose for these actions, which were instead taken in an effort to advance his own personal and business interests to the detriment of Kognetics LLC.

136. Plaintiffs have been harmed by these actions in an amount to be proven at trial exceeding $25,000.

## COUNT XI (BREACH OF FIDUCIARY DUTY) AGAINST RAJEEV VAID

137. Under the terms of Operating Agreement, Rajeev was named as a Manager and COO of Kognetics LLC. (Operating Agreement § 7.03(d)).

138. As a manager, Rajeev owed fiduciary duties to Kognetics LLC, including, but not limited to, those duties set forth in O.R.C. § 1705.29.

139. Such duties include duties to act in good faith, in a manner the manager reasonably believes to be in or not opposed to the best interests of the company, and with the care that an ordinarily prudent person in a similar position would exercise.

140. Rajeev breached his fiduciary duties to Kognetics LLC through the above-described actions, including, but not limited to:

a. falsely informing "all customers" on or before April 21, 2020 that they could no longer receive services from any of Plaintiffs, and that instead, customers would "have to execute a services contract with Kognetics Inc." (Ex. 4, at p. 1);

CO\6530315.3

b. withholding intellectual property assets purchased by Plaintiffs through the APA, thereby impeding the growth of Kognetics LLC's business;

c. misleading Plaintiffs and ultimately failing to perform tasks necessary to enter two potential employees in the H-1B visa lottery and to petition for an existing H-1B employee to fill a position created in the US. These three employees were essential to the development of the Software and further growth of Plaintiffs' business; and

d. on information and belief, secretively pursuing a transaction with third parties during 2019 for the benefit of Defendants and to the detriment of Plaintiffs' business; and

e. on information and belief, overcharging, diverting, or otherwise misappropriating funds paid to Kognetics LLC for improper purposes. (*See, e.g.* Barnhart Letter, at pp. 1-4).

141. Rajeev had no legitimate business purpose for these actions, which were instead taken in an effort to advance his own personal and business interests to the detriment of Kognetics LLC.

142. Plaintiffs have been harmed by these actions in an amount to be proven at trial exceeding $25,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court enter Judgment in their favor and issue the following relief:

1. Preliminary and permanent injunctive relief enjoining Defendant Kognetics Inc. from competing with Plaintiffs for the balance of the three-year restrictive covenant term, plus an

CO\6530315.3

additional period to reflect the length of its breach such that the Plaintiffs enjoy the full benefit of the agreed upon restraints;

2. Monetary damages against each of the Defendants in an amount to be proven at trial;

3. Declaratory judgment confirming that Kognetics Inc.'s Class B units of Kognetics LLC have been fully redeemed;

4. Specific performance of the Asset Purchase Agreement such that Kognetics Inc. must deliver to Plaintiffs the assets set forth in Section 1.01;

5. Plaintiffs' reasonable attorneys' fees and costs (see APA at § 9.03(b); and Employment Agreements, Attachment No. 1 at § 11(b)); and

6. Any such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable in this matter.

Respectfully submitted,

By: ICE MILLER LLP

/s/ *Lydia F. Reback*
James E. Davidson (0024534), *Trial Attorney*
James.Davidson@icemiller.com
Lydia F. Reback (0097766)
Lydia.Reback@icemiller.com
250 West Street
Columbus, OH 43215
Telephone: 614.462.2700
Facsimile: 614.462.5135
*Attorneys for Plaintiffs*

CO\6530315.3