IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STRATESPHERE LLC, *et al.*, | |
| Plaintiffs / Counterclaim Defendants, | Case No. 2:20-cv-2972 |
| v. | |
| KOGNETICS INC, *et al*., | Judge Michael H. Watson |
| Defendants / Counterclaim Plaintiffs. | Magistrate Judge Chelsey M. Vascura |

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

The primary dispositive issue before the Court is whether Counterclaim Defendants

StrateSphere LLC, Kognetics Holding Company LLC, and Kognetics LLC's (collectively,

"StrateSphere") fraudulently induced Counterclaim Plaintiffs Inder Thukral, Rajeev Vaid, and

Kognetics, Inc., (collectively, "Kognetics") to sell the Kognetics Software (the "Software").

StrateSphere's value was not only a consideration, it was *the consideration* for the Software.

StrateSphere offered Kognetics a 10% ownership stake in StrateSphere in exchange for the

Software; indeed, this 10% stake is the "Purchase Price" in the Asset Purchase Agreement

("APA") (which governed the Software's sale).  (*See* Mot. Ex. H, APA at § 11.09 (Doc. 140-6)).

Just one month before the APA was executed, Tariq Farwana, StrateSphere's CEO, directly

represented to Kognetics that StrateSphere LLC was worth $30 to $50 million.  Farwana himself

testified that this was not true.  That this valuation was fraudulent is bolstered by StrateSphere

having repurchased a different member's 3% interest in late-2018 for only $100,000.  In that

stock repurchase transaction, StrateSphere LLC valued itself at a mere $2,821,330—reducing its

valuation to Kognetics just months earlier by more than $47 million.  And this December 2018

valuation was *after* StrateSphere had acquired the interest in the Software and all of Kognetics'

clients.  By drastically overstating its own value in July 2018, StrateSphere fraudulently induced

Kognetics to enter the APA and transfer the highly valuable Software to StrateSphere.

Resolution of this case is as straightforward as it gets.

In StrateSphere's Opposition to Kognetics' Motion for Partial Summary Judgment,

StrateSphere cannot contradict the legitimately undisputed facts.  Thus, StrateSphere leads with

the argument that the exhibits cited in support of the motion do not meet the standards of Federal

Rule of Civil Procedure 56—but StrateSphere is citing to a case that interprets an old version of

Rule 56, which was significantly amended in 2010.  StrateSphere also argues that Vaid's

declaration is inadmissible because it was signed outside of the United States.  Yet Vaid's

deposition was also conducted outside of the United States, was not sworn under penalty of

perjury "under the laws of the United States," and is relied on freely by StrateSphere throughout

its brief.  That is because counsel had stipulated that foreign testimony would be admissible, and

that includes Vaid's declaration.  Therefore, StrateSphere's first argument in opposition to

Kognetics' Motion for Partial Summary Judgment is unavailing.

Next, StrateSphere repeats the argument from its own Motion for Partial Summary

Judgment that Kognetics could not have justifiably relied on Farwana's misrepresentation,

because of a disclaimer contained in the APA's merger clause.  Of course, "fraud cannot be

merged."  *Hodell-Natco Indust., Inc. v. SAP America, Inc.*, No. 1:08-cv-02755, 2010 WL

6765522, at *12 (N.D. Ohio Sept. 2, 2010).  StrateSphere is wrong on the law, as demonstrated

in Kognetics' Opposition to StrateSphere's Motion for Partial Summary Judgment (Doc. 145).

Last, on Kognetics' fraudulent inducement claim, StrateSphere argues that Kognetics

cannot prove intent to mislead.  But in making that argument, StrateSphere ignores Farwana's

own words, in particular that, "the value of [the Software] in the eye of the beholder was five million . . . we took the approach that we'll take [the Software], we have 10 percent available here . . . so that gives you whatever parameter you want to satisfy for yourself."  (30(b)(6) Dep. of T. Farwana (Doc. 123-2) at 102:9–18, Feb. 24, 2022 ("30(b)(6) Farwana Dep.")).  In other words, Farwana knew that a $50 million company valuation would make a 10% stake in the company equivalent to the amount Kognetics had valued the Software, and that this equivalent value was necessary to seal the deal.

Indeed, when the deposition testimony is carefully reviewed, when the case law is carefully reviewed, and when the exhibits are carefully reviewed, there is only one conclusion the Court can come to: as a matter of law, StrateSphere fraudulently induced the APA.  This means that the APA is null and void, and StrateSphere cannot state a claim for breach of contract or for unlawful competition.  In short, StrateSphere's case goes away.  On the matter of fraud in the inducement, the Court should enter summary judgment in Kognetics' favor on all eleven claims in StrateSphere's Second Amended Complaint, and on six of Kognetics' counterclaims.

The second dispositive dispute before the court is the issue of first material breach. Again, StrateSphere's arguments are not supported by the law, and are based on a fundamental misunderstanding of the terms of the APA, the MSA, and the deal structure as a whole.  Because the record supports Kognetics' arguments, the Court should find in Kognetics' favor on all breach of contract claims.  Of course, given the fraudulent inducement claim, the Court need not even address the first breach arguments, but those arguments will be addressed herein, out of an abundance of caution.

In the end, Kognetics' fraudulent inducement claim is dispositive of all claims arising out of and relating to the APA.  Thus, summary judgment should be entered in Kognetics' favor.

3

**ARGUMENT**

Kognetics addresses most of StrateSphere's arguments regarding fraudulent inducement and first breach in its Opposition to StrateSphere's Motion for Partial Summary Judgment. (Doc. 145).  There, Kognetics addresses StrateSphere's argument regarding justifiable reliance (*id.* at PAGEID #7124–30); StrateSphere's arguments regarding the falsity of Farwana's representation that the Software was worth $30 to 50 million (*id.* at PAGEID #7130–33); and StrateSphere's arguments regarding first breach of the APA, the employment agreements, and the Kognetics LLC Operating Agreement (*id.* at PAGE #7133–42).  Kognetics respectfully refers the Court to those pages, and will refrain from repeating the arguments contained therein. Below, Kognetics addresses the new arguments raised in StrateSphere's Opposition to Kognetics' Motion for Partial Summary Judgment.

1.   **The Court May Consider the Exhibits Kognetics Attached to its Motion and Vaid's Declaration.**

StrateSphere relies on a case from 2007 that interprets the old language of Rule 56 in arguing that the Court should not consider the exhibits Kognetics attached to its Motion.  The requirement under former Rule 56(e) stated, if "a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." *Foreword Magazine, Inc. v. OverDrive, Inc.,* No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011).  Rule 56 was overhauled in 2010, and "eliminated the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated." *Id.* This is all academic, however, because the vast majority of exhibits Kognetics cites in its Motion for Partial Summary Judgment had been authenticated with proper foundation in depositions, with a few exceptions.  Those exceptions bear StrateSphere Bates-numbers and were produced in the litigation by StrateSphere.  It is odd that StrateSphere is disclaiming the authenticity of its

4

own documents.  Nevertheless, to the extent StrateSphere attacks its own documents, authenticity will be established at trial for all documents.  The exception to the foregoing is the photograph, which Vaid authenticated in his affidavit, not in his deposition.  (Mot. at 8).  Thus, Kognetics did not submit any unauthenticated documents in support of its Motion.[1]

Perhaps because StrateSphere does not want the Court to consider the photograph, as it is fatal to StrateSphere's case, StrateSphere argues that Vaid's declaration must be ignored as well.  That is, StrateSphere argues that Vaid's declaration is inadmissible because it was signed outside of the United States.  Vaid's deposition was also conducted outside of the United States, as were the depositions of Gaurav Kshretty, Pawan Kumar, Ajay Malaviya, Ravi Parwan, Hetal Shah, Ambar Singh, Adhiraj Sood, and Milind Tataria.  None of those witnesses swore under penalty of perjury "under the laws of the United States."  StrateSphere has made free use of that deposition testimony, because Counsel had stipulated that foreign testimony would be admissible, and Vaid's declaration is likewise admissible.

Further, the current language of Rule 56 allows the Court to review, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Then, the non-moving party may object that the cited material cannot be presented in a form that would be admissible at trial.  *Id.* at 56(c)(2).  Significantly, the objection contemplated by the amended Rule need not show that the material "has not" been submitted in admissible form, but that it "cannot" be:

---

[1]    StrateSphere almost exclusively relies on the testimony of attorney Tiffany Carwile to testify as to the authenticity of StrateSphere and Kognetics documents.  Of course, an attorney cannot establish foundation or authenticate documents—witnesses must do so.  Therefore, to preserve the record, Kognetics objects to each and every document Ms. Carwile purports to authenticate.

> The comments to the 2010 amendments make it clear that the drafters intended to make summary judgment practice conform to procedure at trial. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.

*Foreword Mag., Inc.*, 2011 WL 5169384, at \*2 (internal quotations omitted).  Thus, StrateSphere did not make the proper objection, and in any event, Vaid's declaration testimony would be made in admissible form at trial, where he plans on testifying in person.  As such, StrateSphere's first argument has no foundation in the law, and all of Kognetics' evidence should be considered.

### 2.  Farwana's Own Words Prove StrateSphere's Intent to Deceive

StrateSphere argues that Kognetics cannot prove Farwana's intent to deceive Kognetics regarding StrateSphere's valuation—the consideration that StrateSphere exchanged for the Software.  StrateSphere ignores Farwana's own words.  First, Farwana testified:

> So when we were doing the Kognetics transaction, they presented to us what the value of their software was somewhere in the 4.8 million size.  They thought it was a fair $5 million value.  We were going to give 10 percent of the company.  That's what—how that valuation ended up to be used.

(30(b)(6) Farwana Dep. at 95:13–19).  He also testified:

> [T]he value of [the Software] in the eye of the beholder was five million . . . we took the approach that we'll take [the Software], we have 10 percent available here . . . so that gives you whatever parameter you want to satisfy for yourself."

(30(b)(6) Farwana Dep. at 102:9–18).

In other words, Farwana knew that a $50 million company value would make a 10% stake in the company equal to the value Kognetics had put on the Software, and that value was needed to seal the deal.  Finally, the whiteboard photograph makes clear that Farwana not only misrepresented StrateSphere's value, but he used that misrepresentation to convince Kognetics, Thukral, and Vaid that the package he was offering met their price of $9.6 million for 80% of the

6

Kognetics business.  The evidence is in black and white, is undisputed, and is squarely before the Court:



### 3. StrateSphere Committed the First Breach of the Master Services Agreement.

StrateSphere correctly notes that there are "three *separate* agreements" and that "the promises in each agreement are separate and are not dependent on the promises contained in any other agreement." (StrateSphere's Opp. at 2 (Doc. 144)).  But StrateSphere then conflates its own obligations under the APA with those under the MSA, and selectively quotes from the MSA to define the parties' respective obligations under the MSA.  Each of these fallacies are addressed in turn:

- The MSA defines "Services" to mean "the development, production, and creation of Deliverables **and other related services as required by Company from time to time pursuant to a mutually agreed SOW**." (MSA at § 1.1.5).  StrateSphere omitted the bold language from its Opposition. (*See* Opp. at 4).

- The MSA defines "Deliverables" to mean, "work outputs **as defined from time to time and as per Specifications, and other services or deliverables** that forms part of the Services to be provided by Service Provider to Company **as set forth in a SOW**."  (MSA at § 1.1.5).  StrateSphere omitted the bold language from its Opposition.  (*See* Opp. at 4).

- Kognetics was required to, "Provide the Services in a timely and efficient manner **and to a professional standard which is not less in any respect to the standards generally observed in the industry for similar services."** (MSA at § 2.2).  StrateSphere omitted the bold language from its Opposition.  (*See* Opp. at 4).

- StrateSphere had **"the right to evaluate each Deliverable that the Service Provider delivers to the Company to verify that each conforms to the Specifications as requested by the Company."**  (MSA at § 6.1).  StrateSphere omitted the bold language from its Opposition.  (*See* Opp. at 4).  There is no evidence that Farwana, or any other StrateSphere employee (other than Thukral and Vaid who were the StrateSphere employees tasked with managing the Software), ever asked to evaluate or test any "Deliverable."  Thus, there can be no breach predicated upon a right under the MSA that was never exercised.

- StrateSphere "**shall make payment of fees as per the payment terms mentioned in this Agreement or agreed in an SOW for a specific project and comply with all its obligations hereunder."**  (MSA at § 5.2).  StrateSphere omitted the bold language from its Opposition.  (*See* Opp. at 4).

- StrateSphere was obligated to pay "**Charges in respect of Services provided by Service Provider to Company will be payable as per the Payment Schedule set forth in the SOW.  Service Provider shall be entitled to reimbursement from the Company for all reasonable expenses incurred in connection with the Services provided under this Agreement, including, without limitation, travel, lodging, meals, and transportation.  Service Provider shall give reasonable advance written notice to the Company before incurring such expenses.**"  (MSA at § 7.1).  StrateSphere omitted the bold language from its Opposition.  (*See* Opp. at 4).

- Stratesphere was obligated to pay, "All taxes **including VAT, service tax, etc., where applicable, shall be reflected separately in an invoice and shall be payable by Company**."  (MSA at § 7.4).  StrateSphere omitted the bold language from its Opposition.  (*See* Opp. at 4).

- Per the Statement of Work, fees were set at $2.5 million per annum.  However, there was never a budget of $68,000 per month set for the MSA.  StrateSphere is confusing the capital contribution requirements under the APA with the service payment requirements under the MSA.  In reviewing the obligations required under the APA, Damon Caiazza agreed that under the APA, StrateSphere was obligated to pay Kognetics LLC $1 million in capital contributions over a period of twelve months, minus a pre-APA investment of $180,000.  (Dep. of D. Caiazza at 55:19–56:18, Feb. 18, 2022 ("Caiazza Dep.")).  Of course, $1 million less $180,000, divided by twelve equals $68,333.

9

- Each of the assets listed in the APA Schedule 1.01(c) were included in the Software in August 2018.  (Thukral 30(b)(6) Dep. at 106:21–24).  Therefore, there is no evidence (and StrateSphere never cites to the record) that there were additional charges under the MSA for assets that StrateSphere already owned.

- The transfer pricing, as StrateSphere admits, was required by Indian **taxation** law.  (*See* Opp. at 19, citing India Income Tax (1961) § 92(1), (2)).  The transfer pricing is the base from which India charges taxes.  Under the MSA, StrateSphere was responsible for paying **"All taxes**."  (MSA at § 7.4).  Even if the transfer pricing were not a tax, it would still be proper for Kognetics to charge this fee to StrateSphere because the only reason the transfer pricing was being incurred was so that the Software (which belonged to Kognetics Holding Company) could be serviced.  It was a fee that was incurred under the Statement of Work which permitted fees "to a maximum of US$2,500,000 p.a.," without condition.  (MSA at Annex. A).  Any reference to "additional fees" in the MSA refers to fees in excess of that $2.5 million.  Kognetics never charged StrateSphere more than $2.5 million per year.  As such, there were no overcharges that required authorization.

- Regarding the exchange rate, Caiazza and Kognetics CFO Devesh Bahl agreed to an exchange rate to use for purposes of assessing charges under the MSA.  Specifically, Caiazza testified that making such an agreement, "would be material to doing business across borders."  (Caiazza Dep. at 107:16–108:2).  Farwana testified that Caiazza had the authority to do so.  (Farwana 30(b)(6) Dep. at 120:19–122:3).  And the exchange rate of 65:1 was the average exchange

10

rate for the entire year predating the MSA.[2]  This practice is referred to as using "constant currencies."[3]

- Finally, StrateSphere does not address the extensive financial reconciliation that Kognetics detailed in its Motion, which identified exactly how much Kognetics was underpaid under the MSA.  And Farwana has admitted that the MSA invoices "were not paid in full."  (Farwana 30(b)(6) Dep. 148:15–19).  This more than establishes StrateSphere's liability under the MSA.

## CONCLUSION

As Kognetics has noted before, there are 11 claims and 15 counterclaims in this dispute. They all arise out of StrateSphere's desire to own the Software.  Because StrateSphere fraudulently induced Kognetics into entering the APA, and the Court can decide this as a matter of law, Kognetics respectfully requests the Court enter summary judgment in Kognetics' favor on all eleven claims in StrateSphere's Second Amended Complaint, and on six of Kognetics' counterclaims.  Further, Kognetics respectfully request the Court enter summary judgment in its favor on Count IV regarding StrateSphere's breach of the MSA.

---

[2]     *See Exchange Rates UK*,  https://www.exchangerates.org.uk/USD-INR-spot-exchange-rates-history-2017.html#:~:text=This%20is%20the%20US%20Dollar,INR%20on%2002%20Aug%202017.

[3]     *See* https://www.investopedia.com/terms/c/constantcurrencies.asp

11

Date: June 13, 2022                          Respectfully submitted,

  /s/ Shawn J. Organ
Shawn J. Organ (0042052)
   *Trial Attorney*
Kirsten R. Fraser (0093951)
Connor Organ (0097995)
**Organ Law llp**
1330 Dublin Road
Columbus, Ohio  43215
614.481.0900
614.481.0904 (f)
sjorgan@organlegal.com
kfraser@organlegal.com
corgan@organlegal.com

*Attorneys for Defendants/Counterclaim*
*Plaintiffs Kognetics, Inc., Inderpreet Thukral,*
*and Rajeev Vaid.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 13, 2022, the foregoing was electronically

filed with the Clerk of Court using the CM/ECF system and was served on all counsel of record.


  /s/ Shawn J. Organ
*Attorney for Defendant / Counterclaim*
*Plaintiff Kognetics Inc.*