**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STRATESPHERE LLC, *et al*, | : | |
| | : | |
| Plaintiffs/Counterclaim Defendants, | : | Case No. 2:20-CV-02972-MHW-CMV |
| | : | |
| v. | : | |
| | : | Judge Michael H. Watson |
| KOGNETICS INC, | : | |
| | : | Magistrate Judge Chelsey M. Vascura |
| Defendant/Counterclaim Plaintiff, | : | |

---

**PLAINTIFFS/COUNTERCLAIM DEFENDANTS' REPLY IN FURTHER SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Defendants fail to provide ***any*** legitimate basis to deny Plaintiffs' Motion for Partial Summary Judgment.  After full briefing and review of the admissible evidence, Defendants' fraudulent inducement claim is now seen for what it truly is: an after-the-fact fabricated attempt to extricate themselves from the sale of their Assets, to claw back ownership of the Software, and to save themselves of their undeniable breaches of the binding non-competition agreements.  This claim fails because, as Ohio law makes clear, the APA's disclaimer precludes a finding that Defendants justifiably relied on any valuation of Stratesphere.  Moreover, Defendants have otherwise failed to prove the required elements of this claim.

Plaintiffs are also entitled to judgment as to the contract claims.  Significantly, Defendants do not dispute that nearly half of the Assets they promised to deliver in the APA did not even exist.  Thus, Defendants were in breach on day one, thereby excusing Plaintiffs from any supposed failures to satisfy their obligations—although the evidence shows that Plaintiffs satisfied their obligations.  Nor is there any legitimate dispute that Defendants failed to deliver all the Assets sold via the APA, including fully functioning Software with all source code and Documentation.

Finally, there is no legitimate dispute that, beginning as early as the Spring 2019 and continuing through 2021, Defendants were improperly competing with Plaintiffs.

In sum, far from refuting the arguments raised in Plaintiffs' Motion for Partial Summary Judgment, Defendants' Opposition validates the material facts and contractual obligations identified by Plaintiffs and confirms that summary judgment in favor of Plaintiffs is warranted. For example, despite attempts to continue the false narrative that Plaintiffs were merely "investors," Defendants finally admit that Plaintiffs are the owners of the Software but nevertheless acknowledge that they never intended to relinquish control of the Software. When all the admissible evidence is considered, it is clear that there are no genuine issues of material fact and, therefore, Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment.

## I. LAW AND ANALYSIS[1]

### A. Stratesphere Did Not Fraudulently Induce Defendants.[2]

Defendants failed to produce ***any admissible evidence*** (clear and convincing or otherwise) that Plaintiffs falsely represented Stratesphere to be valued between $30 million and $50 million, that Plaintiffs' intended to mislead Defendants, or that Defendants justifiably relied on any such representation.[3] Without evidence on these points, Defendants cannot pursue a fraudulent inducement claim as a matter of law.

---

[1] Plaintiffs adopt and incorporate as if fully rewritten all arguments, exhibits, declarations, and depositions submitted with their Opposition to Defendants' Partial Motion for Summary Judgment. ECF No. 144.

[2] It is now clear that Defendants have appropriately abandoned their original grounds for claiming fraudulent inducement—*i.e.*, an alleged failure to comply with the APA. Fraudulent inducement cannot be based on promises of performance contained within a contract. *See Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, 2009 WL 2244166, at *4 (N.D. Ohio 2009).

[3] It also is telling that Defendants did not even raise their concocted valuation claim until what was then the eve of trial in December 2021. Indeed, at no point prior to the APA did Defendants ever attempt to verify

1.    **Defendants unequivocally disclaimed reliance on any supposed valuation of Stratesphere.**

The APA could not be clearer: "***There are no representations … other than those expressly set forth in or provided for in this Agreement or the Related Agreements***." APA § 11.09 (emphasis added). This provision effectively warned **all** parties that **any** representations outside the four corners of the APA were **worthless**. Thus, it is impossible for Defendants to have justifiably relied upon any valuation of Stratesphere.

Defendants' attempt to distinguish the cases cited by Plaintiffs falls completely flat. Relying on only part of the analysis in *Axios*, Defendants argue that the decision was based on an explicit disclaimer of a particular representation. ECF No. 145 at PageID 7126. However, two separate issues were presented in *Axios*: (1) whether the fraud claim was contradicted by the terms of the agreement and (2) whether the disclaimer negates any claim of justifiable reliance. *Axios, Inc. v. Thinkware, Inc.*, 2015 WL 5029227, at *7 (S.D. Ohio Aug. 26, 2015). For the first issue, it was important to examine the particular language of the agreement, as the court concluded that a fraud claim could not be based on an alleged fraud that is directly contradicted by a signed writing. *Id.* However, as to the second issue, the court did not rely on the particularity of the language of the contract, instead relying on the analysis provided in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F.Supp.2d 954, 963-64 (N.D. Ohio 1998). *Id.*

Defendants' attempt to distinguish *Goodyear* fares even worse, as the analysis provided by *Goodyear* is directly on point with the facts of this case. In *Goodyear*, the court found it important to first distinguish between liability disclaimers and reliance disclaimers—unlike liability disclaimers, reliance disclaimers are "competent evidence on the issue of reliance," which is a

---

Stratesphere's value; they did not question Stratesphere's value at any point during the parties' year-and-a-half relationship; and they did not even question Stratesphere's value for over a year-and-a-half of litigation.

required element for a fraud claim.[4]  7 F.Supp.2d at 963.  The court also noted that "Ohio law provides that a contracting party may disclaim any representation external to a written document by including appropriate limiting language." *Id.* at 962.  Importantly, the court explained that such disclaimers do not require particular language, "so long as its intent to disclaim is clear." *Id.*  To illustrate, the reliance disclaimer in *Goodyear* simply provided that "[n]o representative has authority to make ***any*** representation, promise or agreement, ***except as stated herein***." *Id.* (emphasis added).  The court concluded that this reliance disclaimer was sufficient to preclude reliance upon ***any*** purported representations outside the four corners of the agreement because it "effectively warns another that such representations are worthless." *Id.*

The courts in *Axios* and *Goodyear* are not alone.  Other courts have similarly held that a provision disclaiming representations outside the four corners of a contract are effective to counter after-the-fact fraud claims.  *See*, *e.g.*, *Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 F. App'x 522, 523 (6th Cir. 2013) (affirming that plaintiff "could not justifiably rely" on defendants' statements because plaintiff "was a sophisticated investor" and "most critically, signed an agreement disclaiming reliance on any statement" by defendant); *Keller Logistics Gr., Inc. v. Navistar, Inc.*, 2020 WL 4597283, at *2 (N.D. Ohio Mar. 20, 2020) (finding that a boilerplate disclaimer, which was not specific as to what was being disclaimed, precluded fraud claims).

On the other hand, the cases cited by Defendants are non-binding, easily distinguishable, and otherwise unpersuasive.  *See* ECF No. 145 at PageID 7125-26.  Defendants first cite a non-binding case from New York for the proposition that a "fraudster could 'perpetuate a fraud with immunity, if he simply has the foresight to include a merger clause.'" *Id.* (citing *Sabo v. Delman*, 3 N.Y.2d 155 (1957)).  However, more recent federal courts in New York have refused to follow

---

[4] A disclaimer of liability "is a direct attempt to avoid legal consequences," whereas a reliance disclaimer "is an attempt to establish a fact." *Goodyear* 7 F.Supp.2d at 963.

4

*Sabo*. *See, e.g.*, *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117 (S.D. N.Y. 1996) (noting that "*Sabo* relies on the slippery distinction between misrepresentation of present fact and a misrepresentation of future intent" and that "[u]nderstandably, courts at times have been vexed by the *Sabo* distinction"). More importantly, the cited language relates specifically to application of the parol evidence rule, not an analysis of reasonable reliance or the disclaimer thereof.[5] *Sabo* at 161.

Furthermore, if Defendants' position were correct, contracting parties would need to include an explicit recitation of ***every possible representation*** that could have been made in order to avoid an after-the-fact claim of fraudulent inducement. This would, in effect, be a never-ending task; or, as *Goodyear* put it, "unless courts enforce disclaimers of reliance to limit claims of fraud, ***parties will be deprived of the fundamental promises of contract law***." 7 F.Supp.2d at 963 (emphasis added). What is more, Defendants' position would effectively read the reliance disclaimer completely out of the APA.[6] This is improper as a matter of law, as all terms of a contract must be given effect in accordance with the express intent of the parties. *See Stonebridge Operating Co., LLC v. Antero Resources Corp.*, 510 F. Supp.3d 567, 582 (S.D. Ohio 2020).

The two Fifth District cases are also distinguishable. First, the court in *Walter v. Jones* was dealing with a third-party complaint against a real estate company. 1982 WL 5547 (5th Dist. Nov. 9, 1982). The real estate company attempted to rely on a liability disclaimer, not a reliance disclaimer. *Id.* at *1. Additionally, while the agreement contained a reliance disclaimer, the court construed its terms "to be limited only to the buyers and sellers and not to encompass the brokers'

---

[5] Likewise, Defendants' reliance upon *Hodell-Natco Indus., Inc. v. SAP Am., Inc.*, 2010 WL 6765522 (N.D. Ohio Sept. 2, 2010), is equally misplaced, as that court addressed the parol evidence rule, not the issue of reasonable reliance.

[6] Indeed, if the APA's disclaimer of all "representations … other than those expressly set forth in" the APA does not apply to all representations found outside the APA, then what does it apply to?

misrepresentations." *Id.* at *2. The second case, *Navistar, Inc. v. Dutchmaid Logistics, Inc.*, also provides no help to Defendants. There, the plaintiffs' claims were based on fraudulent concealment. *Navistar*, 2021-Ohio-1425, ¶¶ 44, 47 (5th Dist.). In reviewing whether the disclaimer prevented such claim, the court distinguished *Goodyear* and *Keller* because both cases involved affirmative misrepresentations not concealment. *Id.* ¶¶ 44-47. The court found that the warranty disclaimer did not preclude fraud claims based on nondisclosure. *Id.* ¶ 47.

Defendants here do not make a fraudulent concealment/nondisclosure claim. Rather, they claim that Plaintiffs made affirmative representations regarding the valuation of Stratesphere. Ironically, despite admittedly having have decades of experience evaluating companies, the value of Stratesphere was ***so important*** to Defendants that they voluntarily chose not to do ***any*** due diligence before entering into the APA. *See* Thukral (30(b)(6)) Dep. at 18-25, 94-95; ECF No. 140-12; Vaid (Ind.) Dep., at 12-17. They made this decision in the face of concerns raised by their own CFO that they were not getting appropriate value for the Software. ECF No. 140-14.

In any event, just as in *Goodyear*, Defendants had "fair warning" when they entered into the APA that any "representations … other than those expressly set forth in or provided for in" the APA, such as the value of Stratesphere, were worthless. APA § 11.09. Thus, no reasonable finder of fact could conclude that Defendants justifiably relied on any valuation of Stratesphere thereby entitling Plaintiffs to judgment on Defendants' fraudulent inducement claim.

### 2. Defendants cannot prove that Stratesphere did not have a value between $30 million and $50 million.

Defendants have completely shirked ***their burden*** to prove, by clear and convincing evidence, the falsity of the alleged representation regarding Stratesphere's value. Despite having complete financial records for Plaintiffs, Defendants have made ***no effort*** to provide any actual valuation of Stratesphere—they have no valuation expert or report from such an expert opining on

Stratesphere's value. Instead, Defendants ask this Court to guess and simply assume that Stratesphere was not worth $30 million to $50 million. This deficiency is dispositive.

Lacking admissible evidence, Defendants persistently twist and manipulate Farwana's testimony. This is improper and no substitute for proof of Stratesphere's value. For example, neither Farwana nor any other representative has ever testified that Stratesphere did not have a value between $30 million and $50 million. By contrast, the First Amendment to the Amended and Restated Operating Agreement of Stratesphere, LLC reveals that the company and its members agreed that the participation threshold would be $50 million. ECF No. 142-2. Likewise, before the APA, Stratesphere's managers determined that Stratesphere should be valued at $50 million. Farwana (30(b)(6) Dep. at 95. Defendants have done absolutely nothing to refute this evidence.

While Farwana admitted that there was no formal valuation of Stratesphere, none was ever requested, and none was necessary. Again, prior to the APA, Defendants did not even request financial records from Stratesphere. Thukral (30(b)(6)) Dep. at 94-95. Further, the mere fact that Stratesphere and a former member reached an agreement on a buyout not based on a formal valuation of Stratesphere is no help to Defendants. Likewise, the mere fact that Farwana does not leverage the value of Stratesphere for personal loans is of no moment. *See* Farwana (30(b)(6)) at 112 ("[A]gain, there's no valuation . . . [w]e don't leverage Stratesphere valuation for anything.").

To be clear, Plaintiffs were not offering a formal business valuation in their Motion—that is not their burden. Instead, the point was merely that, using Defendants' own method[7] for determining the value of the Software business (*i.e.*, $12.12 million), a valuation of Stratesphere

---

[7] Defendants argue that "revenue" is not the correct metric. ECF No. 145 at PageID 7131. However, that is precisely how they calculated the value of the Software and related business, and using the same calculation leads to a value of Stratesphere in the $30-$50 million range. ECF No. 140 at PageID 5940. Moreover, there are numerous valid methods to value a business. *See*, *e.g.*, *Avomeen Holdings, LLC v. Thanedar*, 2019 WL 3491620, at *5 n.5 (E.D. Mich. Aug. 1, 2019); *Popovich v. Sony Music Entm't, Inc.*, 2005 WL 5990223, at *5 (N.D. Ohio May 9, 2005).

falls precisely within the range Defendants claim was represented to them.[8] Quite simply, because there is no evidence that proves that Stratesphere did not have a value of $30 million to $50 million, Defendants cannot prove an essential element of their fraudulent inducement claim.

### 3. Defendants cannot prove that Stratesphere intended to mislead them.

The intent element of Defendants' fraudulent inducement claim is equally lacking. Even if Defendants could prove that Stratesphere did not actually have a value of $30 million to $50 million (they cannot), they have nevertheless failed to prove that Plaintiffs intended to mislead them with a valuation of Stratesphere. Indeed, at all times, Stratesphere's agents were acting reasonably and in good faith because they did not honestly believe that a valuation of Stratesphere was part of the deal. *See* Farwana (30(b)(6)) Dep. at 104; Caiazza (Ind.) Dep. at 36-37. Moreover, the APA's reliance disclaimer both negates Defendants' purported reliance and conclusively precludes a finding that Stratesphere intended to induce Defendants with a representation as to Stratesphere's value. ECF No. 144 at PageID 7083. Quite simply, Stratesphere could not have intended to induce Defendants with something it did not even think was part of the deal. For this additional reason, Defendants' fraudulent inducement claim is without merit.[9]

### B. Defendants Have Failed to Meet Their Contractual Obligations Under the APA.

### 1. Defendants breached the APA on day one.

Plaintiffs provided persuasive evidence that nearly half of the Assets listed in the APA did not even exist in August 2018. ECF No. 140 at PageID 5929. For example, the APA Assets were

---

[8] Defendants also criticize inclusion of the Software's value, arguing that "KHC is" the "owner of the Software." ECF No. 145 at PageID 7132. Although this is a helpful admission, because KHC is a wholly-owned subsidiary of Stratesphere, KHC's value inures to the benefit of Stratesphere and must be included.

[9] Defendants do not dispute that, if their fraudulent inducement claim is without merit, their pre-APA copyright claim will also fail. *See generally* ECF No. 145. Thus, because Defendants' fraudulent inducement claim is without merit, Plaintiffs are entitled to judgment as a matter of law on Count VI of Defendants' Second Am. Counterclaim (ECF No. 32).

to include algorithms for predicting industry maturity, predicting funding likelihood for an industry, and predicting acquisition likelihood for an industry. APA Sch. 1.01(c). When asked whether these algorithms existed in August 2018, Hetal Shah, Defendants' Chief Products Officer and the individual tasked with updating the Software, testified "No." Shah (Feb. 2022) Dep. at 147. The Software to be delivered pursuant to the APA also was to include:

- pipelines for extracting events and signals from unstructured corpus for companies, countries, people, and sectors; extracting facts about companies; and extracting customers from company websites;

- company events taxonomy, country events taxonomy, person events taxonomy, and product events taxonomy; and

- proprietary data relating to company business signals, industry maturity, funding likelihood for industry, and acquisition likelihood for industry.

APA Sch. 1.01(c). Yet, with respect to each of these items, Shah testified that they did not exist in August 2018. Shah (Feb. 2022) Dep. at 142-50. Shah also testified that the required Documentation did not exist. *Id.* at 119-20.

Tellingly, Defendants do not address this evidence at all. *See* ECF No. 145. They submit no evidence that the Assets listed in Schedule 1.01(c) or required Documentation actually existed in August 2018. Because Defendants submit no evidence addressing this dispositive point, this Court should consider the fact "undisputed." Fed. R. Civ. P. 56(e)(2). Also, because this fact establishes that Defendants were in breach of the APA on day one, the Court should grant summary judgment in favor of Plaintiffs on Counts I and III. *Id.* 56(e)(3).

Defendants also breached the APA on day one by not transferring the Assets that did exist to KHC. In response, Defendants offer two faulty arguments: (i) that they satisfied their delivery obligation by signing a Bill of Sale; and (ii) that they satisfied their delivery obligation because Thukral and Vaid were executives of Stratesphere. ECF No. 145 at PageID 7133-34. Both

arguments fail because they do not address the fact that half the assets did not even exist as well as the fact that Thukral and Vaid were not members or executives of KHC (the actual purchaser of the Software).

The APA required Defendants to "sell, transfer, assign, convey and deliver" the Assets to Purchaser—*i.e.* KHC. APA § 1.01. Signing a bill of sale is insufficient to satisfy this obligation because transfer, convey, and deliver mean a physical move of an asset from one person to another. *See MP Star Fin., Inc. v. Cleveland State Univ.*, 107 Ohio St.3d 176, 2005-Ohio-6183, ¶ 8 (noting that transfer means "the conveyance or removal of something from one place, person, or thing to another" (quotations and alterations omitted)); *State v. Rogers*, 2019-Ohio-1761, 136 N.E.3d 36, ¶ 30 (7th Dist.) (convey means "to bear from one place to another or to cause to pass from one place or person to another" (quotations omitted)); *Ward v. Stucke*, 395 F. Supp.3d 940, 954 (S.D. Ohio 2019) (same); *Nationwide Mut. Ins. Co. v. Eckmeyer*, 145 Ohio App.3d 753, 758 (11th Dist. 2001) (deliver means "to take *and* hand over to or leave for another"); *State v. Crockett*, 1996 WL 107438, at *4 (4th Dist. Mar. 6, 1996) (defining deliver as "[t]o put into another's possession or power; surrender; hand over").

Plaintiffs submitted substantial evidence that Defendants did not transfer, convey, or deliver the Assets to KHC. ECF No. 140 at PageID 5930. Furthermore, Thukral and Vaid's access to the Software does not satisfy Defendants' obligations under the APA. The APA required Defendants to hand over the Assets to KHC. Neither Thukral nor Vaid were members or executives of KHC. *See* APA § 1.05; Empl. Agreements (Docs. 140-9, 140-10). Therefore, the fact that they might have had access to the Software is entirely irrelevant to whether they

transferred the Assets to KHC.[10]  *See* Farwana (30(b)(6)) Dep. at 55 ("[Y]ou have to differentiate between the asset and where it should be and then who's manning it.").  Because Defendants offer no real arguments or evidence showing that they actually transferred, conveyed, and delivered the Assets to KHC in August 2018, this Court should grant summary judgment in favor of Plaintiffs. Fed. R. Civ. P. 56(e)(3).

<h3 style="text-align:center">2.    Defendants *never* delivered the Software to Plaintiffs.</h3>

Relying on testimony from Thukral and Shah, Defendants claim that they delivered a fully functioning version of the Software to Plaintiffs in Fall 2019.  ECF No. 145 at PageID 7136.  This is a telling admission.  If Defendants had delivered the Software in August 2018, there would be no need for a delivery in Fall 2019.  Defendants also suggest that the reason the Software would not work in April 2020 was because Plaintiffs unilaterally cut off INC's access.  *Id.* at 7137. Setting aside the accuracy of this statement, it simply proves too much.  Indeed, had Defendants fully satisfied their delivery obligations, including delivery of all Documentations such that "the Software does not have any material undocumented feature," APA § 4.06(k), then Plaintiffs would have been able to operate the Software on their own in April 2020.

Notwithstanding these admissions demonstrating that Defendants never satisfied their delivery obligation, Defendants' arguments fail for another reason: lack of personal knowledge. Defendants rely on Thukral and Shah to support their delivery arguments.  However, as demonstrated in their respective depositions, neither has personal knowledge regarding the supposed transfer.  Because personal knowledge is a requirement for admissibility, the Court should disregard the cited testimony.  *See White v. Honda of Am. Mfg., Inc.*, 2009 WL 3150311,

---

[10] Furthermore, the evidence clearly shows that Thukral and Vaid were not actually working for Stratesphere but working for their own interests.  ECF No. 140 at PageID 5930-33.  So, their access to the Software should not even be imputed to Stratesphere.

at *5 (S.D. Ohio Sept. 30, 2009) ("A witness may not testify to a matter unless . . . the witness has personal knowledge of the matter." (quoting Fed. R. Evid. 602)).

When asked where certain components of the Software were located, Thukral testified that "I think you are best to get those questions answered from Hetal, because he's the technical expert." Thukral (Feb. 7) Dep. at 62. When asked about other technical aspects of the Software's code, Thukral admitted that he did not have this information and that Shah might not even have the information. *Id.* at 140-41. Indeed, Thukral had no recollection whether Plaintiffs had full administrative access to the source code. *Id.* at 145-46. Shah also did not have details about the transfer of the Software and related source code. Shah admitted that he was not involved in the physical transfer of the source code because he "did not have the capability." Shah (Feb. 2022) Dep. at 112. And when asked whether he knew what source code was transferred, Shah stated "I wouldn't know that." *Id.* at 112-13. Shah also did not know whether anything was removed from the source code before being provided to Plaintiffs in December 2019. *Id.* at 113-14.

Quite simply, Plaintiffs are the only ones that have submitted proper Rule 56(c) evidence, which shows that they never received all of the Assets purchased under the APA, including fully functional source code. ECF No. 140 at PageID 5929-30. Accordingly, Defendants' continued failure to provide the Software is further reason to grant Plaintiffs' Motion.

### 3. Plaintiffs have satisfied their obligations under the APA.

By contrast, and as detailed in their prior filings, Plaintiffs satisfied the purchase price and the royalty payment obligations under the APA.[11] *Id.* at 5929, 5932-33; ECF No. 144 at PageID 7072-74. In addition, although Defendants lack standing to raise an alleged lack of capital contributions, *see Lynx Servs., Ltd. v. Horstman*, 182 F. Supp.3d 757, 767 (N.D. Ohio 2016)

---

[11] As set forth in Plaintiffs' Opposition (ECF No. 144), the Omnibus Restructuring Agreement that Defendants attempt to rely on is inadmissible under Rule 408 of the Federal Rules of Evidence.

(concluding that a member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company), Stratesphere did in fact satisfy its obligation to KHC in that regard.  ECF No. 142-18.

Similarly, Defendants also lack standing to assert an alleged failure to raise equity or debt capital.  *See* APA § 1.10(b) (providing that ***Stratesphere*** would assist ***KHC*** (***not INC***) in raising equity and/or debt capital).  In any event, the APA does not require Plaintiffs to raise any equity or debt capital, as falsely claimed by Defendants.  ECF No. 145 at PageID 7135; APA § 1.10(b). The APA merely provides that Stratesphere will "assist and support" attempts to raise equity or debt capital over a period of five years (which has not yet elapsed) and that "this capital requirement may change based on revision to the business plan."  APA § 1.10(b).

Such "[i]ndefinite and aspirational language does not constitute an enforceable promise." *Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 677 (6th Cir. 2001).  "[A] breach of contract will not arise from the failure to fulfill a statement of goals or ideals."  *Id.*  While it may have been the Parties' goal, assisting and supporting attempts to raise equity or debt capital up to $20 million over a five-year period is plainly aspirational and not an enforceable provision.  This is particularly true here where the APA sets forth no description of the efforts to be used, any promise as to the manner of the assistance or support, or any standards to determine whether the assistance or support was adequate.  *Id.* at 676-77 (finding language aspirational because it did not provide adequate descriptions, promises, or standards).

Even if Defendants had standing to assert a claim based on an alleged lack of fundraising (they do not), and even if the fundraising clause was enforceable (it is not), the evidence demonstrates that Stratesphere satisfied this obligation.  *See* Farwana (30(b)(6)) Dep. at 59-60. Indeed, as the evidence conclusively demonstrates, throughout the Parties' relationship, Plaintiffs

met or exceeded their obligations under the APA.[12]  Accordingly, this Court should grant judgment in favor of Plaintiffs on Counts I and III of the Second Amended Complaint.

### C.      Defendants Improperly Competed with Plaintiffs in Violation of the Parties' Agreements.

Attempting to obfuscate the truth—that they competed with Plaintiffs in violation of the Parties' Agreements (including APA, employment agreements, and KLLC Operating Agreement)—Defendants ignore the evidence, tell half-truths, and otherwise misrepresent the facts.  However, when all the admissible evidence is considered, the only conclusion one can reach is that Defendants repeatedly and continually competed with Plaintiffs.[13]

### 1.      Defendants improperly competed with Plaintiffs as early as Spring 2019.

In the face of evidence that they competed in early 2019 via Boston Analytics, Defendants assert that all work was actually on behalf of Plaintiffs.  ECF No. 145 at PageID 7138.  Not so. For example, in March 2019, Ajay Malaviya sent a proposal to Aadyah on behalf of Boston Analytics.  Declaration of Tiffany Carwile Ex. 278; Declaration of Ajay Malaviya Ex. 279.  Boston Analytics proposed to help Aadyah, among other things, identify competitors, gaps in the market, and to help Aadyah fill those gaps.  Malaviya Decl. Ex. 279 at 3.  To secure Aadyah's business, Boston Analytics marketed itself as a group of "consultants and M&A advisors," who use a "unique methodology" comprising of "data analytics to identify and qualify opportunities."  *Id.* at 5.  Some of Boston Analytics "unique competencies" were represented to include "investment and M&A decision making," "industry and company analytics," and an AI Platform with data

---

[12] Again, even if Plaintiffs had not met their obligations, because Defendants breached first any alleged failure on Plaintiffs' part is excused.  *Nious v. Griffin Constr., Inc.*, 2004-Ohio-4103, ¶ 16 (10th Dist.).

[13] Defendants' assertion that this Court has already considered the evidence of competition is inaccurate. The Court never issued a ruling on Plaintiffs' Second Motion for Preliminary Injunction, but instead consolidated the hearing with the trial on the merits.

extraction, data transformation, advanced analytics and visualization, and augmented intelligence. *Id.* at 6, 8. This is a clear reference to the Software sold to KHC.

Boston Analytics' proposal was successful, and in April 2019, Aadyah signed a contract with ***Boston Analytics*** to "scan the market and prepare a list of potential investors." Carwile Decl. Ex. 280 at 8. The agreement specifically stated that Aadyah would pay ***Boston Analytics*** (not Plaintiffs) for these services. *Id.* at 9. And these services were the same services provided by the Software. Kshretty Dep. at 100-01 (testifying that the Software provided insights on investors). Contrary to Defendants' claims, this evidence clearly establishes that Defendants were not working on behalf of Plaintiffs but were working on behalf of themselves through Boston Analytics.

With regard to Factset, Defendants' "innocent" explanation for their actions is belied by the fact that they negotiated ***in secret*** and ***against*** the interests of Plaintiffs. ECF No. 140 at PageID 5931-32. If they were merely attempting to get employed like they allege, there would have been a single negotiation wherein their employment was part of the package.[14] Instead, there were two negotiations; one of which was kept secret, and which ultimately ruined the deal. *Id.*

All of these actions in 2019 violated the APA, the employment agreements, and the KLLC operating agreement. *Id.* at 5929-33.

### 2. Defendants' actions in April and May 2020 were not "self-help" but were instead improper competition.

Recognizing the blatant impropriety of their conduct, Defendants attempt to recast their improper competition in April and May 2020 as merely "self-help," arguing that they were

---

[14] In any event, neither Thukral nor Vaid would be permitted to secure such employment under the terms of their agreements with Plaintiffs. ECF Nos. 140-9, 140-10.

"forced" to take action and were doing so for the benefit of the Software and KLLC.[15]  ECF No. 145 at PageID 7139.  Nothing could be further from the truth.

When the relationship between the parties ended in March 2020, Defendants improperly made a copy of the Software and then reached out to customers (whose contracts had either been assigned to KLLC or entered into with KLLC) to tell them that INC would, on a go forward basis, be the one to support the customer.  Thukral (30(b)(6)) Dep. at 250; ECF No. 140-18.  When asked if Defendants ever informed customers that KLLC was still in operation and still able to provide services, Defendants responded "No."  Thukral (30(b)(6)) Dep. at 244-45.  In fact, far from inuring to the benefit of KLLC, Defendants admit that they were telling customers that they should not look to KLLC to continue to service the contracts but should instead look to Defendants.  *See* ECF No. 140-19 at PageID 6165 ("All customers have been informed that they can no longer be served under existing contracts.  They have been made aware that they can maintain continuity of service by contracting directly with Kognetics Inc."); ECF No. 140-18.  Even if Defendants could validly claim ownership of the Software at that point—which they cannot—this would still constitute improper competition.

### 3. Defendants continued to improperly compete with Plaintiffs after May 2020.

As to competition after May 2020, Defendants do not address Plaintiffs' evidence that they misappropriated Plaintiffs' marketing materials for their own use.  *Compare* ECF No. 140 at PageID 5934-35 *with* ECF No. 145 at PageID 7137-40.  The APA gives Plaintiffs ownership of the marketing materials, and the use of someone else's materials constitutes competition.  *See Drake Med. Co. v. Glessner*, 68 Ohio St. 337, paragraph three of syllabus (1903).  Because they

---

[15] Defendants again offer an interesting concession, stating that protection of the Software "inured to the **sole** benefit of KLLC."  ECF No. 145 at PageID 7139 (emphasis added).  Of course, it would only inure to the "sole" benefit of KLLC if KLLC was the "sole" owner of the Software and/or Software business.

offer no evidence contrary to Plaintiffs' evidence, this Court should consider this fact undisputed and grant summary judgment in favor of Plaintiffs relating to Defendants' competition. Fed. R. Civ. P. 56(e).

Additionally, their claim that their consulting services are different than the Software is false. The Software provided insights on customers, investors and industries; answered questions regarding who can buy a company, the market map of an industry, and which investor can fill gaps; and identified potential competitors, a company's products, and competitors' products. Kshretty Dep. at 100-02. Since April 2020, Kshretty (one of Defendants' employees) has been providing essentially the same professional services.[16] *Id.* at 25-26. For example, he identified competitors of a client and the products offered by those competitors. *Id.* at 37-38. He also identified products and the market for those products. *Id.* at 47-48. To do this work, Kshretty has access to an application (software) that identifies companies in specific product areas and creates market maps and attractiveness maps. *Id.* at 52-55.

Furthermore, Defendants' COO confirmed that Boston Analytics markets the ***same*** capabilities as the Software. Shah (Feb. 2022) Dep. at 166-67; *compare* ECF No. 142-3 at 12 *with* 142-4 at 10. The obvious conclusion is that Defendants' consulting services provide the same service that the Software provides. Contrary to Defendants' analogy, they were not making "bread" while Plaintiffs made "cookies." ECF No. 7140. Instead, the apt analogy is that both Defendants and Plaintiffs are marketing and making cookies, but Plaintiffs use an oven and Defendants a campfire—that still constitutes competition. Because Defendants cannot provide

---

[16] The APA explicitly defines "Competing Product" to include any "service" similar to the functions provided by the Software. APA § 9.02.

services similar to, or in substitution of, the Software, they have been and continue to compete against Plaintiffs in violation of the APA, employment agreements, and operating agreement.[17]

### 4.  Defendants improperly engaged in unfair competition.

The only defense that Defendants offer to Plaintiffs' unfair-competition claim is that Defendants did not have an intent to deceive, arguing that Plaintiffs' evidence demonstrates merely "ambiguous language choices and some cut-and-paste errors."  ECF No. 145 at PageID 7143. Even if these arguments could be taken at face value—which they cannot in light of the overwhelming evidence of improper competition—they are still insufficient to create a genuine issue of material fact.

Defendants have acknowledged that if a customer relationship was with one company, that customer would be confounded by receiving communications from a different company purporting to offer the same services.  *See* Thukral (30(b)(6)) Dep. at 159-60.  Having that knowledge, and also knowing that Defendants' representatives were reaching out to KLLC customers via other entities (such as Boston Analytics and Kognetics.ai) marketing the Software, Defendants made no effort to follow up with those customers to clear up any misunderstanding.  *See* Deposition of Inderpreet Thukral (Boston Analytics 30(b)(6)) at 38.  In this respect, Defendants' self-serving explanations are insufficient to overcome the compelling inference of intent.  *See Drake*, 68 Ohio St. at 358-59; *Discount Muffler Shops, Inc. v. Seely*, 1983 WL 6849, at *3 (6th Dist. July 1, 1983); *DeClerq v. Pawelec*, 1980 WL 351137, at *2 (6th Dist. Jan. 4, 1980); *Lichtenstein v. Levin*, 27 Ohio N.P.(N.S.) 337, 339-40 (Ohio C.P. 1927).  Because Defendants' conduct constitutes unfair

---

[17] Defendants' citation to deposition testimony from Ravi Parwan and Malaviya does not change this analysis.  First, neither testified that the consulting services were completely different than the Software. Malaviya Dep. at 45; Parwan Dep. at 25.  Second, they specifically limited their testimony to the time that they worked for Defendants; they said nothing about Defendants' actions after May 2020.

competition, Stratesphere is entitled to judgment in its favor as to liability on Count VI of its Second Amended Complaint (ECF No. 31).

### D. Defendants Cannot Prove Their Tortious Interference Claim.

Defendants do not dispute the well-settled law that tortious interference will not lie against a party when that party is the source of the business opportunity.[18] Instead, Defendants' sole argument is the strained contention that Stratesphere was not the "source of the business opportunity" between INC and the Pythhos entities. This, however, ignores the practical realities of the situation. Indeed, Defendants admit that INC did not have its own employees and did not have the ability to satisfy its obligations to KHC under the MSA. Vaid (30(b)(6)) Dep. at 102-03. Thus, INC contracted with the Pythhos entities to provide those services to KHC. *Id*. at 80-81. The Pythhos entities were effectively subcontractors, making Plaintiffs the source of the business opportunity. As a result, Defendants' tortious interference claim must fail. *Lundeen* at ¶ 42.

Defendants also offer no evidence that hiring former Pythhos employees caused a breach or termination of the business or contractual relationship between INC and the Pythhos entities. Nor have Defendants disputed the fact that there could be no interference with the Pythhos employee contracts because Plaintiffs and Defendants were not competitors. Thus, Defendants cannot show that Plaintiffs intentionally caused those employees to breach their agreements. *McConnell v. Hunt Sports Ent.*, 132 Ohio App.3d 657, 689 (10th Dist. 1999). Plaintiffs are entitled to judgment as a matter of law on count VII of Defendants' Second Am. Counterclaim (ECF No. 32).

---

[18] *See Lundeen v. Smith-Hoke*, 2015-Ohio-5086, ¶ 42 (10th Dist.) ("[T]he tort of willful interference with a business relationship does not exist where the defendant was the source of the business opportunity allegedly interfered with." (quotation omitted)).

### E. Plaintiffs Are Entitled to Judgment on Defendants' Books and Records Claim.

Defendants concede that Plaintiffs have provided the information required by former Ohio Revised Code § 1705.22(A)(1) but argue that this claim is not moot because the purported "threat" of withholding documents in the future remains. ECF No. 145 at PageID 7130 n.2. However, because Section 1705.22 no longer exists, Plaintiffs cannot have a future claim for violation of a non-existent statute. Accordingly, the claim is moot, and this Court should enter judgment in favor of Plaintiffs as to Count X of Defendants' Second Am. Counterclaim (ECF No. 32).

## II. CONCLUSION

For each of the foregoing reasons, as well as those set forth in Plaintiffs' Motion for Partial Summary Judgment and Response in Opposition to Defendants' Partial Motion for Summary Judgment, there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law as to Counts I-III, VI, VII, and X of INC's Second Amended Counterclaim (ECF No. 32), the Counterclaims of Thukral and Vaid (Docs. 45, 46), and as to liability on Counts I-VI and IX of Plaintiffs' Second Amended Complaint (ECF No. 31), as Supplemented (ECF No. 79). Plaintiffs therefore respectfully request that this Court grant their Motion for Partial Summary Judgment.

Respectfully submitted,

*/s/ Tiffany L. Carwile*
James E. Arnold  (0037721)
Jonathan P. Corwin (0075056)
Tiffany L. Carwile (0082522)
ARNOLD & CLIFFORD LLP
115 W. Main Street, 4th Floor
Columbus, Ohio  43215
Tel: (614) 460-1600 / Fax:(614) 469-1066
Email:      jarnold@arnlaw.com
                jcorwin@arnlaw.com
               tcarwile@arnlaw.com
*Counsel for Plaintiffs/Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022, a true and accurate copy of the foregoing *Reply* was filed with the Court using the Clerk of Court's electronic filing system, which will send notice of this filing to all parties that have entered an appearance in this matter and consented to electronic service.

*/s/ Tiffany L. Carwile*
Tiffany L. Carwile